

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00517-CR

John Nathan **CAVANESS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 452nd Judicial District Court, Mason County, Texas
Trial Court No. 164724
Honorable Robert Rey Hofmann, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:     Rebeca C. Martinez, Justice
             Patricia O. Alvarez, Justice
             Luz Elena D. Chapa, Justice

Delivered and Filed:  August 8, 2018

AFFIRMED

John Nathan Cavaness appeals his conviction for failure to stop and render aid. He raises four issues on appeal: (1) there is legally insufficient evidence to support his conviction; (2) the trial court erred in allowing improper impeachment evidence; (3) the trial court erred in denying his motion for continuance; and (4) the trial court erred in denying his request for substitution of appointed counsel.

## BACKGROUND

On May 20, 2016, eighty-seven-year-old Emmajo Wallace was turning left into a post office when she was hit by Cavaness's vehicle. It is undisputed that this vehicle was traveling at approximately seventy miles per hour prior to its driver braking in an attempt to avoid the collision. Wallace's vehicle spun into the parking lot of the post office and was ultimately totaled due to the impact. Two postal workers who witnessed part of the accident called 9-1-1, and EMS treated Wallace on-scene. Doctors later determined that Wallace had broken three cells in her left hand probably as a result of hitting her hand on the driver-side window during the accident. The driver of Cavaness's vehicle neither stopped nor returned to the accident scene to give information and render aid. The Mason County Sheriff's Office conducted an investigation that ultimately led to Cavaness's arrest.

Cavaness was indicted for failure to stop and render aid at the scene of an accident resulting in injury to a person. Cavaness pled not guilty, and the case proceeded to a jury trial. At trial, the State put on circumstantial evidence connecting Cavaness to the accident. For example, Mason County Sheriff's Deputy Doug Wall explained his investigation of the accident, and photographs he had taken of the scene of the accident, the damage done to both vehicles, and Wallace's injured hand were admitted into evidence. Wallace and the two postal workers testified about the incident, and Cavaness's girlfriend, Nicole, testified that Cavaness had been upset and drinking heavily on the morning of the accident. There was additional expert testimony about the collision, as well as testimony from Cavaness's brother's parole officer. After the State rested, the defense called Cavaness as its sole witness for the guilt-innocence phase of trial. Cavaness testified on his own behalf that he was not driving his car during the time of the accident, even though it is undisputed that his car was the car that hit Wallace. Cavaness explained that he was at home asleep during the accident, and therefore, could not have been driving his vehicle.

After hearing the evidence, the jury returned a guilty verdict. During the punishment phase of the trial, Cavaness pled true to two enhancement allegations, and was sentenced to twenty-five years in prison by the jury.

## LEGAL SUFFICIENCY

In his first issue, Cavaness argues there is insufficient evidence to support a purported "critical element" of the offense: whether it was apparent someone had been injured in the accident. On the other hand, the State contends it was not required to prove it was apparent Wallace had been injured in the accident. Before deciding if there is sufficient evidence to support Cavaness's conviction, we must first determine if "apparent injury" is an element of the offense. In other words, what is the requisite culpable mental state for failure to stop and render aid in an automobile accident involving personal injury?

Cavaness was indicted and convicted of violating section 550.021(c)(2) of the Texas Transportation Code. A person commits an offense under section 550.021(c)(2) "if the person does not stop or does not comply with the requirements" listed in subsection (a). *See* TEX. TRANSP. CODE ANN. § 550.021(c)(2) (West Supp. 2017). Section 550.021(a) of the Texas Transportation Code provides:

> The operator of a vehicle in an accident that results or is reasonably likely to result in injury to or death of a person shall:
>
> (1) immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
>
> (2) immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident;
>
> (3) immediately determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid; and
>
> (4) remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

*Id.* § 550.021(a). Section 550.023 provides:

> The operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:
>
> (1) give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;
>
> (2) if requested and available, show the operator's driver's license to a person described by Subdivision (1); and
>
> (3) provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that the treatment is necessary or if the injured person requests the transportation."

*Id.* § 550.023 (West 2011).

As this court noted in *Gabay v. State*, neither section 550.021 nor section 550.023 expressly provide a culpable mental state. No. 04-14-00783-CR, 2016 WL 929213, at *4 (Tex. App.—San Antonio Feb. 24, 2016, no pet.) (mem. op., not designated for publication); *see also* TEX. TRANSP. CODE §§ 550.021, 550.023. In *Goss v. State*, the Court of Criminal Appeals held "that the culpable mental state thereby required for the offense of failing to stop and render aid is that the accused had knowledge of the circumstances surrounding his conduct, i.e., had knowledge that an accident had occurred." 582 S.W.2d 782, 785 (Tex. Crim. App. [Panel Op.] 1979) (internal citation omitted).

The operator of a vehicle involved in an accident need only have known that an accident occurred in order to be subject to the duty to stop, investigate, and render aid. *See Mayer v. State*, 494 S.W.3d 844, 851 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). The accused is not required to have subjective knowledge of the nature or extent of the injury resulting from the accident, or even that a person was involved. *See Barnette v. State*, No. 08-09-00147-CR, 2011 WL 486949, at *1 (Tex. App.—El Paso Feb. 9, 2011, pet. ref'd) (not designated for publication);

*Marez v. State*, No. 13-06-00476-CR, 2007 WL 2333155, at *3 (Tex. App.—Corpus Christi Aug. 16, 2007, pet. ref'd) (mem. op., not designated for publication); *Goar v. State*, 68 S.W.3d 269, 272 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). "Such a prerequisite would defeat the public interest, which is served by requiring drivers involved in collisions to stop, provide specified information, and render assistance if necessary." *McCown v. State*, 192 S.W.3d 158, 162-63 (Tex. App.—Fort Worth 2006, pet. ref'd).

Based on the case law and the purpose of the statute, we hold that an "apparent injury" is not an element of the offense of failure to stop and render aid in an automobile accident involving personal injury. Cavaness's first point of error is overruled.

## IMPEACHMENT EVIDENCE

Cavaness also argues the trial court committed reversible error by allowing the State to impeach his credibility with thirteen and twenty-year-old convictions. A prior conviction is presumptively inadmissible for impeachment purposes if more than ten years has passed since the date of conviction or of the release from confinement for it, whichever is later." *See* TEX. R. EVID. 609(b); *see also Butler v. State*, 890 S.W.2d 951, 954 (Tex. App.—Waco 1995, pet. ref'd). However, a remote conviction can be admitted for impeachment purposes if the court determines that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b).

During Cavaness's cross-examination, the State asked him whether he had been convicted of a felony. It is undisputed that Cavaness's felony convictions were over ten-years-old at the time of trial. However, Cavaness answered two questions about the convictions before his attorney objected.

Q: Mr. Cavaness, have you been convicted of a felony before?
A: Yes, ma'am.
Q: How many?

A: Seven.
Q: Do you remember what they were for?
A: The first one I got –.

Cavaness's trial attorney then objected. After a bench hearing outside the presence of the jury, the trial court overruled the objection, and allowed the State to continue the line of questioning for the limited purpose of determining Cavaness's truthfulness.

Additionally, prior to the objected-to line of questioning, Cavaness offered, and the trial court admitted, medical records that contained numerous references to Cavaness's violent and criminal past. For example, the records indicated Cavaness had "assaulted [his] family," had used "meth and cocaine," "smokes weed every day," scared his daughter's mom "because she has seen him hurt people," "lost his job…after an event…where he was accused of taking tires," had "a history of substance abuse," "tried to burn down [his] house," had "thoughts of hurting others, [had] been violent with others," spent "10 years in prison," "had been in prison 15 years after killing a person," and had "been in prison in the past for shooting a man and stealing a car which he then tried to sell to an undercover policeman."

The State contends Cavaness waived his complaint regarding impeachment evidence because he did not timely object to the line of questioning, and alternatively, because he offered the medical records into evidence, thus "opening the door" to the line of questioning. Cavaness argues that he timely objected to the substance of the impeachment evidence, and did not open the door to the State's line of questioning. Moreover, Cavaness argues the trial court's error was harmful because his entire case depended on his truthfulness and whether the jury believed him when he testified he was asleep at home during the accident.

Even if the trial court erred in allowing the State to question Cavaness about the nature of his prior remote convictions, we must disregard the error unless it affected Cavaness's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App.

2002). Substantial rights are not affected by the erroneous admission of evidence if, "after examining the record as a whole, [we have] fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla*, 78 S.W.3d at 355. In assessing the likelihood that the jury's decision was adversely affected by the error, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Id.* We "may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable." *Id.* at 355-56. Finally, whether the State emphasized the error can be a factor. *Id.* at 356.

An examination of the record indicates the impeachment evidence did not likely adversely influence the jury's verdict. Even if the trial court had not allowed the State's questioning regarding Cavaness's prior felonies, the jury would still have been made aware of Cavaness's criminal past through the admission of the medical records by Cavaness himself. Further, the jury could have rationally found Cavaness's testimony not credible based on the circumstantial evidence brought forward by the State. Additionally, the record reflects the State did not emphasize or mention the felony convictions at any time other than during the complained-of line of questioning. Finally, the trial court instructed the jury twice and limited the jury to only consider the felony convictions when determining Cavaness's truthfulness. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (explaining that we presume the jury follows the trial court's instructions). Therefore, even assuming the trial court erred in allowing the line of questioning considered impeachment evidence, it was harmless. Cavaness's second point of error is overruled.

## MOTION FOR CONTINUANCE

In his third issue, Cavaness argues the trial court erred in denying his First Written Motion for Continuance. The motion was based upon the unavailability of a supposed material witness

whose testimony, it was proffered, would have demonstrated that Cavaness was asleep on his couch at the time of the accident.

We review a trial court's ruling on a motion for continuance for abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). To establish an abuse of discretion, there must be a showing that the denial of the motion actually prejudiced Cavaness. *Id.* Further, when the defendant's motion for continuance is based upon an absent witness, the defendant must show "(1) that the defendant has exercised due diligence to procure the witness's attendance, (2) that the witness is not absent by the procurement or consent of the defense, (3) that the motion is not made for delay, and (4) the facts expected be proved by the witness." *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005); *see* TEX. CODE CRIM. PROC. ANN. art. 29.06 (West 2006). It must also appear to the trial court that the facts are material. *Harrison*, 187 S.W.3d at 434. The Court of Criminal Appeals has interpreted the diligence requirement "to mean not only the diligence in procuring the presence of a witness, but also diligence as reflected in the timeliness with which the motion for continuance was presented." *Dewberry v. State*, 4 S.W.3d 735, 756 (Tex. Crim. App. 1999). The failure to seek a subpoena for an out-of-state witness may demonstrate counsel was not diligent. *See Nelson v. State*, 297 S.W.3d 424, 433 (Tex. App.—Amarillo 2009, pet. ref'd).

Six days before trial Cavaness orally moved for a continuance based on an absent witness, specifically his brother Jesse. The trial court denied the motion, but said it would consider a written motion on the first day of trial, and ultimately did. Cavaness represented in the written motion: "Due Diligence has been used to procure the attendance of JESSE CAVANESS, specifically: a. JESSE CAVANESS was incarcerated in Arizona for an unknown reasons [sic]. He has in the past week obtained release from incarceration and is in the Phoenix area. He is unable to travel voluntarily here for trial." Cavaness explained "[t]he reason that [Jesse] is unavailable is because

he was incarcerated in Arizona up until Friday and he is unable to get here on his own from the Phoenix area."

Because Cavaness filed the motion six days before trial, and because he did not subpoena Jesse, we hold that the trial court did not abuse its discretion in denying the motion for continuance. Cavaness's third point of error is overruled.

## SUBSTITUTION OF APPOINTED COUNSEL

In his fourth issue, Cavaness argues the trial court erred by denying his request to substitute his appointed counsel, and effectively forcing him to go to trial with ineffective assistance of counsel. We review a trial court's refusal to appoint substitute counsel for abuse of discretion. *See Carroll v. State*, 176 S.W.3d 249, 256 (Tex. App.—Houston [1st. Dist.] 2004, pet. ref'd). A trial court is under no duty to search until it finds an attorney agreeable to the defendant. *See Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982). Once a court has appointed an attorney to represent an indigent defendant, the defendant has been afforded the protections provided by the Sixth and Fourteenth Amendments, and Article 26.04 of the Texas Code of Criminal Procedure. *Id.* If a defendant is displeased with his appointed counsel, he must bring the matter to the court's attention, and then carries the burden of proof to demonstrate that he is entitled to a change of counsel. *Id.* Under *Malcom*, we must examine the record to determine if Cavaness's contention has merit. *See id.* at 792.

Based on an examination of the record, Cavaness was provided adequate assistance of counsel. The record indicates that Cavaness's attorney was present for every hearing, met with Cavaness three separate times to review the evidence, and discussed potential witnesses with him. Additionally, the record shows that Cavaness's trial counsel filed several pre-trial motions with the court. During trial, Cavaness's appointed counsel raised several objections and cross-examined the State's witnesses. Cavaness has failed to meet his burden and has not shown he was entitled to

a change of counsel. We hold the trial court did not abuse its discretion in denying Cavaness's request for substitution of appointed counsel. Cavaness's final point of error is overruled.

## CONCLUSION

We affirm the trial court's judgment of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH